UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

JOSHUA THOMAS,
    Plaintiff,

08-1101

SHERIFF HUSTON, et. al.,
    Defendants.

**SUMMARY JUDGEMENT ORDER**

This cause is before the court for consideration of the defendants motions for summary judgement [d/e 90, 92].

The plaintiff has the following claims against defendants at the Tazewell County Jail:

1) Defendants Steve Van Dusen, Kurt Ulrich and Robert Huston violated the plaintiff's due process rights by punishing him without a hearing;
2) Defendants Van Dusen, Ulrich, and Huston violated the plaintiff's constitutional rights based on his living conditions;
3) Defendant Van Dusen and Ulrich retaliated against the plaintiff based on previous lawsuits and grievances;
4) Defendant Van Dusen used excessive force against the plaintiff on May 16, 2008;
5) Defendant Correctional Officer Piro used excessive force against the plaintiff on May 31, 2006;
6) Defendant Jozef Szadkowski excessive force in the fall of 2006; and,
7) Nurse Jessica Baker was deliberately indifferent to the plaintiff's serious medical condition on May 26, 2006.  *See* July 10, 2008 Case Management Order*; see also* August 22, 2008 Text Order

The plaintiff was a pretrial detainee at the relevant time periods in his allegations.

I. FACTS

The plaintiff did not directly respond to each of the undisputed facts presented by the defendants.  Therefore, the following facts are taken from the motions for summary judgement and the exhibits.

In his deposition, the plaintiff admits he has been in the Tazewell County Jail on more than one occasion.  On May 26, 2006, the plaintiff says he was arrested after he got into a fight with his stepfather. (Def. Memo, Plain. Depo, p. 12)   The plaintiff says during the argument, he went through a plate-glass door.   The plaintiff says he does not remember much about the incident, but says he was not pushed through the door, but went through the door on his own. (Def. Memo, Plain. Depo, p. 19, 25) The plaintiff admits he had been drinking at different bars prior to the incident.

1

(Def. Memo, Plain. Depo, p. 15)

Dawn Hostetler says she is a Correctional Officer at the Tazewell County Jail. (Def. Mot, Host. Aff, p. 1). On May 27, 2006, the officer says she was working at the Booking Desk with Officer Brad Catton. Their shift began at 6:00 a.m. When the officers arrived at work, they were told that some individuals still needed to be booked including the plaintiff. (Def. Mot, Host. Aff, p. 1-2) (Def. Mot, Cat.. Aff, p. 1-2) Hostetler says it was noted that the plaintiff had refused medical care at the scene of his arrest and when he first arrived at the Tazewell County Jail. (Def. Mot, Host. Aff, p. 2)

Both officers say the plaintiff was "yelling, screaming, beating on his cell door and generally acting in a disruptive and abusive manner." (Def. Mot, Host. Aff, p. 2); (Def. Mot, Cat.. Aff, p. 2). The plaintiff refused to calm down and continued in this manner until he broke the window in his cell at approximately 8:00 a.m. (Def. Mot, Host. Aff, p.2) The plaintiff disputes this claim and says he was calm until after a nurse left his cell later in the morning.

At approximately 10:00 on the morning of May 27, 2006, Nurse Jessica Baker was called to see the plaintiff. Nurse Baker says when she arrived, she saw that the plaintiff had broken the window out of his cell and had spread blood on the window and wall of his cell. Nurse Baker did not provide medical care at this time, but the parties dispute why this occurred. The plaintiff admits he was agitated after the nurse left and says this is when broke his cell window.

The medical records show the plaintiff had calmed down enough to receive treatment by two in the afternoon on May 27, 2006. The treating nurse noted that the plaintiff had multiple cuts to his upper and lower let arm. The nurse noted that three of the wounds were deep and she "steri-stripped" them together. (Def. Mot, Baker Aff, p. 3) The rest were treated with Neosporin and gauze. The plaintiff did not require hospitalization. (Def. Mot, Baker Aff, p. 3).

Early the next morning, the plaintiff was again checked by a registered nurse. All the plaintiff's wounds were healing well. The nurse removed the old dressing and added new bandages. (Def. Mot, Baker Aff, p. 3).

The plaintiff was again evaluated on May 29, 2006, by a doctor. The plaintiff's wounds were healing well. (Def. Mot, Baker Aff, p. 4). The plaintiff was again evaluated on May 30, 2006, and he continued to improve. (Def. Mot, Baker Aff, p. 4). The plaintiff in his deposition admits the cuts have all healed. (Def. Memo, Plain. Depo, p. 39)

On June 8, 2006, the plaintiff refused an intake physical and signed a refusal of treatment form. (Def. Mot, Baker Aff, p. 4). On June 9, 2006, the plaintiff was seen by a mental health professional. He showed no signs or symptoms of a serious mental health issue. However, the plaintiff said he did not remember coming to the jail and admitted that alcohol made have lead to the incident. (Def. Mot, Baker Aff, p. 4-5).

The plaintiff was again seen by medical staff on June 13, 2006; June 17, 2006 and July 10, 2006 to discuss his desire to be in the general population. No problems are noted.

On July 11, 2006, the plaintiff saw Dr. Falcon. The medical note indicates a long history of substance abuse. The plaintiff shows poor impulse control and appears paranoid and delusional. The doctor believes the plaintiff's mood is unpredictable and could be triggered in the general population. The doctor's assessment is that certain mental health conditions need to be considered and ruled out. (Def. Mot, Baker Aff, p. 6).

Also in 2006, the plaintiff says Defendant Correctional Officer Szadkowski punched him in the face four or five times, but the plaintiff is unable to provide a specific time period besides the fall of 2006. The defendant says he wrote a report documenting on incident in which he used force against the plaintiff during this time period. (Def. Memo, Szad. Aff. p. 2)

On August 4, 2006, Defendant Szadkowski says he was assisting the transportation of inmates and detainees from court hearings. (Def. Memo, Szad. Aff. p. 2). The plaintiff approached the defendant and stated that he had cut his arm while getting out of the transport van. Defendant Szadkowski says he "examined his arm and observed no open wound of any kind." (Def. Memo, Szad. Aff. p. 2). The officer claims the plaintiff began to yell and swear at him and then began to move toward him. Defendant Szadkowski says he told the plaintiff to move back, but it had no impact. The officer says he placed his hands at the base of the plaintiff's neck an pushed him in order to "physically direct (the plaintiff) into the booking area of the jail and away from other inmates." (Def. Memo, Szad. Aff. p. 2). The officer claims the plaintiff still continued to move in towards him, so he pushed him back again and then assisted other officers in escorting the plaintiff to his cell. The officer claims the plaintiff resisted officers and pushed Defendant Szadkowski. (Def. Memo, Szad. Aff. p. 2).

Defendant Szadkowski says he did not injury the plaintiff or harm him in any way, but used only the force necessary to protect himself and other inmates. (Def. Memo, Szad. Aff. p. 2). The plaintiff was examined by a nurse after the incident. No injuries were noted and no medical treatment was needed. (Def. Memo, Szad. Aff. p. 2).

Several members of the jail staff including Sergeant Ulrich, Sergeant Van Dusen, Officer Jozef Szadkowski, Officer Brad Catton, Officer Marissa Force, Officer Darrell Slavin and Officer Trent Strunk have submitted affidavits stating that the plaintiff was consistently disruptive in the jail and threatened the security of the staff and property. Each has provided a deposition recounting incidents with the plaintiff. These individuals also claim the plaintiff:

> violated numerous jail rules and regulations. [The plaintiff] threatened
> jail staff with physical harm, damaged jail property, attempted to make
> contact with other inmates and detainees in violation of jail rules and
> regulations and consistently refused order of jail staff. [The plaintiff]
> consistently made attempts to contact other detainees and inmates in
> an effort to cause a larger disturbance in the Tazewell County Jail.
> (Def. Memo, Ulrich Aff, p. 1)

Nurse Baker adds that during the plaintiff's stay at the jail, she felt physically threatened by him on many occasions. (Def. Memo, Baker Aff., p. 6) Officers Hostetler and Catton add that the May 27, 2006 incident was not the only time the plaintiff broke out a cell window in the jail. (Def.

3

Mot, Host. Aff, p. 2; (Def. Mot, Cat.. Aff, p. 2). Defendant Catton says the plaintiff also broke out a cell window at the Tazewell County Jail on May 1, 2008.

Defendant Ulrich says the plaintiff began his jail stay in 2008 in the general population, but was moved to the Special Housing Unit due to security concerns. Ulrich says the plaintiff still attempted to make contact other inmates in the unit. (Def. Memo, Ulrich Aff, p. 2). The defendant says in response, blankets or curtains were placed over the window to the plaintiff's cell to prevent him from seeing when other detainees or staff were near his cell. Defendant Ulrich maintains this move was made to maintain order and security in the jail. (Def. Memo, Ulrich Aff, p. 2)

Defendant Van Dusen says property was also temporarily removed from the plaintiff's cell. The defendant says the items were returned when the plaintiffs behavior no longer indicated that access to the property would place jail security and safety at risk. (Def. Memo, V.D. Aff, p. 2)

Specifically, Defendant Van Dusen says on May 16, 2008, he and Correctional Officer Strunk went into the plaintiff's cell after they were informed that the plaintiff was kicking his cell door. The plaintiff was ordered to lay on his bunk with his hands behind his back. (Def. Memo, V.D. Aff, p. 3) The defendant says he secured the plaintiff and held the plaintiff against the far wall while his property was removed by Officer Strunk. Defendant Van Dusen says the property was removed to prevent the plaintiff from "using it to cause a disruption or damage of any kind." (Def. Memo, V.D. Aff, p. 3) Both Defendant Van Dusen and Defendant Strunk state that the plaintiff was not injured during this encounter. (Def. Memo, Strunk Aff., p. 2 ) (Def. Memo, V.D. Aff, p. 3)

The defendant has provided a copy of video footage of the May 16, 2008, event which confirms Officer Van Dusen's version of events. Jail Superintendent Earl Helm says not all cells are equipped with video recording devices. (Def. Memo, Helm. Aff, p. 1). However, detainees or inmates who are identified as being a high risk to the safety of staff or other inmates are placed in cells with recording devices. Helm states that the plaintiff was in such a cell on May 16, 2008. (Def. Memo, Helm Aff., p. 1)

It is not clear when the video recording begins, but the court notes the video does not depict the plaintiff kicking the cell door prior to the officers entry. Nonetheless, it is clear the plaintiff is upset. The recording shows the officers enter the cell, secure the plaintiff and move him to a standing position against the far wall, all without incident. Once the officer and the plaintiff are at the far wall, the camera angle does not show much besides the feet of Defendant Van Dusen and the plaintiff. There is little movement by either the plaintiff or Defendant Van Dusen during this brief time, but the viewer can see Officer Strunk removing the plaintiff's property. The officers leave the cell without incident and without any further contact with the plaintiff. Once the officers leave the cell, the plaintiff returns to full camera view and there are no injuries observed on his face. (Def. Memo, video).

Defendant Huston says he is the Tazewell County Sheriff and is therefore the warden of the Tazewell County Jail. (Def. Memo, Hust. Aff, p. 1). However, Defendant Huston says he has no direct or personal supervisory duties over the jail and does not respond to detainee request forms. (Def. Memo, Hust. Aff, p. 1, 2). The defendant says he has never met the plaintiff and has never had any contact with him. In addition, while Defendant Huston says he is aware that the plaintiff

had damaged property and threatened staff, the plaintiff did not complain to him about the allegations in his complaint.   The plaintiff admits he has never had personal contact with this defendant. (Def. Memo, Plain. Depo, p. 60, 62)

## II. LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56c.  Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).  The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000).  A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e).   In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added).  Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991).  "But the inferences and opinions must be grounded in observation or other first-hand personal experience.  They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

## III. ANALYSIS

A. FAILURE TO EXHAUST

Defendants Van Dusen, Ulrich, Huston, Piro and Szadkowski first argue that the plaintiff has failed to exhaust his administrative remedies for the claims in his complaint.   The defendants state that a detainee may file complaints at a local level, but if they are unresolved, the detainee may submit the complaint to the Jail and Detention Standards Unit of the Illinois Department of Corrections.  *See* Ill. Admin. Code tit. 20, § 701.160(c)(2).

The parties agree the plaintiff filed numerous grievances the Tazewell County Jail, but the plaintiff alleged in his complaint that he did not get responses from jail staff.  The defendants apparently do not dispute this claim.  In addition, the court notes that the Detainee Handbook

submitted by the defendants makes no mention of the need to appeal grievances to the Jail and Detention Standards Unit. (Def. Memo, Det. Handbook p. 16).  Instead, the handbook only mentions one appeal to jail staff.  It is also unclear how a detainee could submit a grievance to the Jail and Detention Standards Unit without first receiving a response from the local jail.

"Preventing inmates from submitting grievances, or failing to respond to their grievances, renders administrative remedies unavailable. And where administrative remedies are unavailable, they are deemed exhausted for purposes of § 1997(e)(a)." *Turner v. Huston*, 2005 WL 1316959 at 2 ( 7th Cir. May 23, 2005) *citing Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir.2004); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir.2002).   The motion for summary judgement for failure to exhaust is therefore denied.

B. DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL CONDITION.

The plaintiff maintains that Nurse Baker was deliberately indifferent to his serious medical condition on May 26, 2006.  Because the plaintiff was a pretrial detainee, his §1983 claim falls under the Fourteenth Amendment's Due Process Clause rather than under the Eighth Amendment. *Butera v. Cottey,* 285 F.3d 6901, 605 (7th Cir. 2002).  Nonetheless, the claim is still "analyzed under the Eighth Amendment test." *Henderson v. Sheahan,* 196 F.3d 839, 844 n.2 (7th Cir. 1999).  Therefore, the plaintiff must pass both an objective and a subjective test in order to establish that the defendants violated his constitutional rights. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).  The first prong of the test requires the plaintiff to demonstrate that the alleged deprivation was sufficiently serious. *Id*.

The second prong of the test requires the plaintiff to show that the defendant acted with deliberate indifference*. Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  "[A] finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless." *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997)(citing *Farmer* at 840-42) [P]roof of deliberate indifference may be found where a prison official intentionally denies or delays access to medical care or intentionally interferes with the treatment once prescribed." *Jones v. Natesha* ,151 F.Supp.2d 938, 945 (N.D. Ill.  2001) *citing Ford,* 2001 WL 456427 at 6. However, "an inmate who complains that delay in medical treatment rose to constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Langston v Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996).

While the plaintiff has several claims before the court, the bulk of his responses to the summary judgement motion address the claim against Nurse Baker. The plaintiff maintains that he was calm when he first entered the jail on May 26, 2006.  He says this day was the first time he met Nurse Baker, but for some reason she refused to provide him any care for his numerous lacerations. (Def. Memo, Plain. Depo, p. 31, 34-35) Instead, the plaintiff maintains Nurse Baker laughed at him and said she hated criminals and hated treating them.

Nurse Baker and correctional officers at the jail tell a wholly different version of events. They state that the plaintiff was extremely agitated, was screaming and yelling and had broken out the window in his cell.  Nurse Baker says she had been working with detainees for two years, "and had never seen a detainee act in the manner the plaintiff did..." (Def. Mot, Baker Aff, p.2)

Nurse Baker says the plaintiff was physically threatening and violently kicking the walls, doors and windows. The defendant says she tried to calm the plaintiff down by speaking to him, but he refused to comply. (Def. Mot, Baker Aff, p.2)

> It was determined that it would be a threat to my personal safety
> and to the security of the jail for me to enter the plaintiff's cell
> in order to attempt to provide treatment. I informed the plaintiff
> that if he did not calm down, I would not be able to provide him
> medical treatment. Plaintiff's refusal to calm down was a
> constructive refusal of medical treatment. (Def. Mot, Baker Aff, p.2)

Defendant Catton agrees that opening the cell door on that morning would have posed a threat to Nurse Baker. (Def. Mot, Cat.. Aff, p. 2)

It is difficult to believe that any fact finder would believe the plaintiff's version of events particularly since he has admitted he was drinking prior to the events and has admitted he does not remember how he entered the jail. In addition, there is some evidence the plaintiff refused medical care twice before he saw Nurse Baker.

Irregardless, the plaintiff's claim fails because he has not shown that any delay in receiving treatment for his lacerations had a detrimental effect on his condition. *Langston,* 100 F.3d at 1240. The plaintiff has presented no verifying medical evidence of any harm due to the delay and instead admits in his deposition that his injuries have healed. While the plaintiff says he still has scars, he has not demonstrated that those scars are the result of the delay in care. The motion for summary judgement on this claim is granted.

C. DUE PROCESS

The plaintiff alleges that Defendants Van Dusen and Ulrich placed him in segregation without a hearing in violation of his due process rights. The Supreme Court has held that a pretrial detainee may not be punished for misconduct while in custody without due process. *Bell v. Wolfish*, 441 U.S. 520, 535-37 (1979); *see also Higgs v. Carver*, 286 F.3d 437, 438-39 (7th Cir.2002); *Zarnes v. Rhodes*, 64 F.3d 285, 291 (7th Cir.1995). To establish a right to due process, a pretrial detainee must demonstrate either 1) an "expressed intent to punish on the part of detention facility officials" or 2) that the challenged condition or restriction lacked a reasonable relationship to a legitimate, non-punitive administrative purpose. *Bell*, 441 U.S. at 538-39; see *Rapier v. Harris*, 172 F.3d 999,1005 (7th Cir.1999).

It is not clear to the court how long the plaintiff was in segregation based on the evidence presented. The plaintiff simply argues that he was put in segregation without a hearing and that the Sheriff knew about his placement, but did nothing. The defendants maintain that the plaintiff was a security risk and had threatened staff, and this was the basis of his placement. The defendants have provided numerous affidavits noting the plaintiff's repeated violation of jail rules, breaking jail property and threatening jail staff. The defendants have also presented a mental health evaluation noting that the plaintiff had poor impulse control and could be a threat to others. Finally, the

defendants maintain that even after the plaintiff was placed in segregation, he continued to try to make contact with other inmates.

After reviewing the undisputed facts in this case, the court concludes that the plaintiff has failed to demonstrate that his placement in segregation required a due process hearing. There is no evidence of an express intent on the part of the defendants to punish the plaintiff. The defendants may take reasonable steps to maintain security and protect jail staff in order to ensure the effective management of the detention facility. The motion for summary judgement on this claim is granted.

D.  LIVING CONDITIONS

The plaintiff maintains Defendants Van Dusen, Ulrich, and Houston violated his constitutional rights based on his living conditions at the Tazewell County Jail. At the outset, the court notes that a defendant cannot be held liable under 42 USC §1983 unless the plaintiff can demonstrate that the defendant caused or participated in the alleged constitutional violation. *McBride v. Soos*, 679 F.2d 1223, 1227 (7th Cir. 1982). For a supervisor to be held liable under 42 U.S.C. § 1983, he "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye. . . ." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988).

Defendant Huston had no direct dealings with the day-to-day operation of the county jail and had no knowledge of the plaintiff's complaints. The plaintiff has admitted he had no contact with this individual. The mere fact that he is a supervisor is not enough. Therefore, the court will dismiss Defendant Huston.

Although the Eighth Amendment does not apply to pretrial detainees, pretrial detainees are entitled to at least as much protection as the constitution provides convicted prisoners. *See Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir.2003). The Eighth Amendment protects an inmate from a governmental actor's "deliberate indifference to his basic needs." *Id*. at 620. "The Supreme Court has emphasized that 'no static test' can exist by which courts determine whether conditions of confinement are cruel and unusual." *DeMallory v. Cullen,* 855 F.2d 442, 445 (7th Cir. 1988) *citations omitted.* "In all cases, the determination as to whether prison conditions constitute cruel and unusual punishment turns on the totality of the circumstances." *Id.*

In addition, the Seventh Circuit has made clear that the "mere fact that pretrial detention interferes with a person's desire to live comfortably and free from restraint does not, without more, make the conditions of that confinement unconstitutional." *Board v. Farnham*, 394 F.3d 469, 477 (7th Cir. 2005). Rather, conditions of confinement which are "reasonably related to a legitimate and non-punitive government goal," are not unconstitutional. *Antonelli v. Sheahan*, 81 F.3d 1422, 1427-28 (7th Cir.1996).

The two specific living conditions mentioned by the plaintiff are the taking of his personal property and the placement of blankets over his windows. At this stage of the litigation, the plaintiff has still failed to provide exact time frames for his allegations.

The defendants respond that the plaintiff's property was removed at times to maintain security and ensure the safety of staff.  However, the defendants say any restrictions of his property were limited, because they were temporary and limited to specific security threats.  In addition, the defendants say blankets or curtains were placed over the plaintiff's widow to maintain security and orderly operation of the jail.  The defendants claim the curtains were designed to prevent the plaintiff from seeing approaching staff or other inmates.   The defendants maintain it was a reasonable step given his repeated threats to harm staff and repeated attempts to contact other inmates.

The plaintiff has not clearly articulated any other problems with his living conditions in the Tazewell County Jail.  The court finds that the actions of the defendants were reasonably related to maintaining security and safety at the jail and the plaintiff was not denied the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 US 337, 347 (1981); *See also Harris v. Fleming*, 839 F.2d 1232, 1234 (7th Cir. 1988).   The motion for summary judgement on this claim is granted.

E. RETALIATION

The defendants argue that the plaintiff has no evidence of his retaliation claim.  The plaintiff says Defendant Van Dusen and Ulrich retaliated against the him based on previous lawsuits and grievances.  In order to prevail on a First Amendment retaliation claim, "a prisoner must demonstrate the following: (1) that the speech at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill v Pidlypchak,* 389 F.3d 379, 380 (2nd Cir. 2004).   If the plaintiff succeeds in showing that his constitutionally protected conduct was a motivating factor in a defendant's actions, then the burden shifts to the defendant to prove by a preponderance of the evidence that the same actions would have occurred in the absence of the protected conduct. *Spiegla v. Hull*, 371 F.3d 928, 942-43 (7th Cir. 2004).

First, its not at all clear what the plaintiff is alleging prompted any retaliatory acts.  The plaintiff does not point to any specific grievances, nor any previous lawsuits.  Second, even if the plaintiff could point to specific grievances or lawsuits, he has no evidence that they were the basis of the defendants actions.   The defendants have provided sufficient evidence that their actions were based on safety and security within the jail. The motion for summary judgement on this claim is granted.

F. EXCESSIVE FORCE

The defendants argue they did not use excessive force against the plaintiff, but only used force that was necessary in each instance.  "The scope of an individual's right to be free from punishment-and, derivatively, the basis for an excessive force action brought under § 1983-hinges on his status within the criminal justice system." *Lewis v. Downey*, 581 F.3d 467, 473 (7th Cir. 2009)  "[A pretrial] detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)   Therefore, a pretrial detainee "may not be 'punished' by the state in any way." *Wilson v. Williams*, 83 F.3d 870, 875 (7th Cir. 1996) *citing Bell,* 441 U.S. at535.   Consequently, pretrial detainees couch excessive

force claims as violations of their Fourteenth Amendment rights to due process. *See Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir.2002); *Pardue ex rel. Estate of Cole v. Fromm*, 94 F.3d 254, 259 n. 1 (7th Cir.1996). This Fourteenth Amendment protection "necessarily extends beyond the prohibition of merely 'cruel and unusual' punishment," resulting in "a higher standard [of protection] than that provided by the Eighth Amendment." *Wilson,* 83 F.3d at 875. Unfortunately, "the exact contours of any additional safeguards remain undefined" by the Supreme Court. *Lewis,* 581 F.3d at 474 *(citing Wilson,* 83 F.3d at 875).

The Seventh Circuit has noted that " [m]ost of the time the propriety of using force on a person in custody pending trial will track the Fourth Amendment....' " *Wilson*, 83 F.3d at 875-76. This Amendment poses the question "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 109 S.Ct. at 1872. The relevant inquiry is whether the officials behaved in a reasonable way in light of the facts and circumstances confronting them. *Wilson,* 83 F.3d at 875..

The plaintiff's first allegation of excessive force claims that Defendant Van Dusen used excessive force against the plaintiff on May 16, 2008. The plaintiff claims the defendant hit his face against concrete wall 4-5 times, then put him down on the concrete floor and placed a knee in his back for no reason. The plaintiff's allegations are not consistent with the clear evidence of the video recording. The motion for summary judgement on this claim is granted.

The plaintiff's second claim is that Defendant Szadkowski used excessive force against him sometime in the fall of 2006. The plaintiff claims the defendant struck him several times in the head, but even at this stage of the litigation, he has failed to provide a more specific time frame or any other evidence in support of this claim. The defendant points to one occasion on August 4, 2006, in which he wrote a report concerning the use of force against the plaintiff. The plaintiff has not confirmed or denied whether this was the occasion he was referring to. However, based on the facts before the court, this incident would also not rise to the level of excessive force. The plaintiff repeatedly refused orders to back away from the officer. The officer pushed the plaintiff twice to protect himself and maintain security. The plaintiff saw a nurse, and no injuries were noted.

In addition, the plaintiff has come forward with no other specific information concerning his allegation that Defendant Szadkowski used excessive force. Therefore, the motion for summary judgement is granted on this claim.

The plaintiff's final claim is that Defendant Piro used excessive force against the plaintiff on May 31, 2006. The plaintiff says the defendant was handing out food trays. He handed a tray to the plaintiff, then pushed a cell door closed on the plaintiff's foot which caused bruising and a cut to his foot.  The plaintiff has presented no evidence of any medical records or any attempts to receive medical care to corroborate his claim.  Based on the record before the court, the plaintiff has not demonstrated that Defendant Piro used excessive force on May 31, 2006. The motion for summary judgement is granted.

**IT IS THEREFORE ORDERED that:**

**1) The defendants' motions for summary judgment are granted. [d/e 90, 92]. The Clerk of the Court is directed to enter judgment in favor of the defendants and against the plaintiff pursuant to Fed. R. Civ. P. 56. The case is terminated. The parties are to bear their own costs.**

**2) If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g)**

**3) The agency having custody of the plaintiff is directed to remit the docketing fee of $350.00 from the plaintiff's prison trust fund account if such funds are available. If the plaintiff does not have $350.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $350.00 is paid in its entirety. The filing fee collected shall not exceed the statutory filing fee of $350.00.**

**4) The plaintiff is responsible for ensuring the $350.00 filing fee is paid to the clerk of the court even though his case has been dismissed. Release from incarceration does not relieve the plaintiff of his obligation to pay the filing fee in full. The plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such change.**

**5) The clerk is directed to mail a copy of this order to the plaintiff's place of confinement, to the attention of the Trust Fund Office.**

Entered this 16th day of March, 2010.

s\Harold A. Baker

_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE